# EXHIBIT A



IN THE COURT OF COMMON PLEAS OF WAYNE COUNTY
COMMONWEALTH OF PENNSYLVANIA
22ND JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN J. BATCHER, | : | |
| | : | |
| PLAINTIFF, | : | CIVIL ACTION |
| | : | |
| vs. | : | NO. /5/ -2022 -CIVIL |
| | : | |
| ROCKET MORTGAGE, LLC AND | : | |
| AMROCK, LLC, | : | |
| DEFENDANTS. | : | |

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

Wayne County Courthouse
Honesdale, PA 18431
Intake 1-877-953-4250
Monday-Thursday 9:30-11:30am and 1:30-3:30pm
Friday 9:30-11:30am



IN THE COURT OF COMMON PLEAS OF WAYNE COUNTY
COMMONWEALTH OF PENNSYLVANIA
22ND JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN J. BATCHER, | : | |
| | : | |
| PLAINTIFF, | : | CIVIL ACTION |
| | : | |
| vs. | : | NO.  /5 /-2022 -CIVIL |
| | : | |
| ROCKET MORTGAGE, LLC AND | : | |
| AMROCK, LLC, | : | |
| DEFENDANTS. | : | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

**AND NOW COMES,** the Plaintiff, John J. Batcher, by and through his attorney, John J.

Martin and files this Complaint For Damages, and in support thereof avers the following:

### PARTIES

1.  That Plaintiff is John J. Batcher ("Batcher") an adult individual with an address at 204

Terrace Heights, Honesdale, Pennsylvania 18431.

2.  That Defendant Rocket Mortgage, LLC is the successor in interest to Quicken Loans,

LLC ("Rocket Mortgage") with a registered agent within the Commonwealth of Pennsylvania

designated as %CT Corporation System Philadelphia with an address at 1515 Market Street,

Philadelphia 19102. A copy of the business search records dated April 6, 2022, from the

Pennsylvania Corporation Bureau is attached hereto, made a part hereof and labeled Exhibit "A".

3.  That Defendant Amrock, LLC is the successor in interest to Amrock, Inc. ("Amrock")

with a registered agent within the Commonwealth of Pennsylvania designated as %CT

Corporation System Philadelphia with an address at 1515 Market Street, Philadelphia 19102. A

copy of the business search records dated April 6, 2022, from the Pennsylvania Corporation

Bureau is attached hereto, made a part hereof and labeled Exhibit "B".

## BACKGROUND

4.  That at all times relevant hereto, Batcher was the owner of certain real property situated in the Borough of Honesdale, County of Wayne and State of Pennsylvania with a Tax Id Number: 11-0-0018-0008 9 with a value in excess of $200,000.00 ("Real Property").

5.  That on or about August 20, 2020, Batcher executed a mortgage in favor of Rocket Mortgage in the original principal amount of One Hundred Ninety-Two Thousand One Hundred and 00/100 Dollars ($192,100.00) with said mortgage being recorded on or about November 2, 2020, at Wayne County Record Book 5752 at Page 120 ("Mortgage").  A copy of said Mortgage is attached hereto, made a part hereof and labeled Exhibit "C".

6.  That Amrock acted as the settlement agent on behalf of Rocket Mortgage and conducted the settlement of the mortgage transaction with Batcher and acted as disbursing agent. A copy of the Settlement Statement for the closing is attached hereto, made a part hereof and labeled Exhibit "D".

7.  That at all times relevant hereto, Amrock was acting as the authorized agent of Rocket Mortgage.

8.  That Amrock collected the sum of $102.75 from Batcher for the cost of recording the Mortgage [see page two (2) of the Settlement Statement] and therefore Rocket Mortgage and Amrock had a duty and a contractual obligation to record the Mortgage in a timely fashion.

9.  That Amrock and/or Rocket Mortgage failed to timely record the Mortgage in the real estate records of Wayne County, Pennsylvania in that the Mortgage was recorded more than sixty (60) days following its execution.

10.  That on or about August 28, 2020, The Dime Bank entered judgment by confession in the Court of Common Pleas against Batcher in the amount of $49,047.41 in the matter of The Dime Bank vs. Umpy's Too, et al. Civ-287-2020 creating a lien on the Real Property in favor of

The Dime Bank ("Dime Bank Judgment). A copy of the docket in this matter is attached hereto, made a part hereof and labeled Exhibit "E".

11. That on or about April 21, 2021, Batcher commenced a chapter 7 bankruptcy case under the United States Bankruptcy Code ("Code"). A copy of the docket in this matter is attached hereto, made a part hereof and labeled Exhibit "F".

12. That as a chapter 7 debtor under the Code, Batcher was entitled to exercise his rights under 11 U.S.C. § 522(f) to avoid the Dime Bank Judgment and have it stricken as a lien on the Real Property if the Dime Bank Judgment was a junior lien to the Mortgage

13. That as result of the negligence and breach of contract on the part of Rocket Mortgage and/or Amrock in failing to timely record the Mortgage, Batcher was unable to avail himself of his rights under the Code and avoid the Dime Bank Judgment as the Dime Bank Judgment was senior in lien priority status to the lien of the Mortgage.

14. That the Real Property is currently scheduled for Sheriff's Sale on the Dime Bank Judgment which will deprive Batcher of the Real Property and Batcher will suffer irreparable harm and damages in an amount in excess of $200,000.00.

## COUNT I
## BREACH OF CONTRACT

15. That Batcher restates the allegations contained in paragraphs (1) thru (14) as if the same were more fully set forth herein.

16. That Rocket Mortgage and/or Amrock breached the contract by and between Rocket Mortgage and/or Amrock and Batcher in that Rocket Mortgage and/or Amrock failed to timely record the Mortgage in the real estate records of Wayne County, Pennsylvania.

17. That as a result of the breach of contract, the Real Property is currently scheduled for Sheriff's Sale on the Dime Bank Judgment which will deprive Batcher of the Real Property and Batcher will suffer irreparable harm and damages in an amount in excess of $200,000.00.

**WHEREFORE,** the Plaintiff, John J. Batcher, prays this Honorable Court to enter judgment against the Defendants Rocket Mortgage, LLC and Amrock, LLC in an amount in excess of $200,000.00 and for such other and further relief as the Court deems just and proper.

## COUNT II
### NEGLIGENCE

18.  That Batcher restates the allegations contained in paragraphs (1) thru (17) as if the same were more fully set forth herein.

19.  That Rocket Mortgage and/or Amrock had a duty and/or undertook the duty (by collecting the recording fee to record the Mortgage to record the Mortgage in a timely fashion.

20.  That Rocket Mortgage and/or Amrock breached their duty to Batcher by failing to record the Mortgage in a timely fashion.

21.  That Rocket Mortgage's and/or Amrock's failure to record the Mortgage in a timely fashion is the direct and proximate cause of Batcher's damages.

22.  That as a result of the negligence of Rocket Mortgage and/or Amrock, the Real Property is currently scheduled for Sheriff's Sale on the Dime Bank Judgment which will deprive Batcher of the Real Property and Batcher will suffer irreparable harm and damages in an amount in excess of $200,000.00.

**WHEREFORE,** the Plaintiff, John J. Batcher, prays this Honorable Court to enter judgment against the Defendants, Rocket Mortgage, LLC and Amrock, LLC, in an amount in excess of $200,000.00 and for such other and further relief as the Court deems just and proper.

Date: April 7, 2022

Respectfully submitted,

John J. Martin, Esquire
Law Offices of John J. Martin
1022 Court Street
Honesdale, Pennsylvania 18431
(570) 253-6899
jmartin@martin-law.net

# VERIFICATION

I, John Batcher, Plaintiff, being duly sworn according to law deposes and says that the facts set forth in the above Pleading is true and correct to the best of my knowledge, information and belief, and that I am making these statements subject to the penalties of PA C.S. Section 4904, relating to unsworn falsification to authorities.

4|5|22
Date

John Batcher

IN THE COURT OF COMMON PLEAS OF WAYNE COUNTY
COMMONWEALTH OF PENNSYLVANIA
22ND JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN J. BATCHER, | : | |
| | : | |
| PLAINTIFF, | : | CIVIL ACTION |
| | : | |
| vs. | : | NO. *15 1* -2022 -CIVIL |
| | : | |
| ROCKET MORTGAGE, LLC AND | : | |
| AMROCK, LLC, | : | |
| DEFENDANTS. | : | |

I hereby certify that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that request filing confidential information and documents differently that non-confidential information and documents.

Date: April 7, 2022

Respectfully submitted,

John J. Martin, Esquire
Law Offices of John J. Martin
1022 Court Street
Honesdale, Pennsylvania 18431
(570) 253-6899
jmartin@martin-law.net

2022 APR - 7  A 10: 24
PROTHONOTARY AND
CLERK OF COURTS
WAYNE COUNTY, PA

Corporations ▾    Search Business Entities (corpsearch.aspx)    Search UCC Transactions (uccsearch.aspx)    Forms ▾

Contact Corporations (http://www.dos.pa.gov/BusinessCharities/Pages/default.aspx)          Login (https://hub.business.pa.gov/login)

Search entity / Select entity / Order documents

# Order Business Documents

Date: 04/06/2022

## Business Name History

| Name | Name Type |
|------|-----------|
| QUICKEN LOANS INC | Prior Name |
| Quicken Loans, LLC | Prior Name |
| ROCKET MORTGAGE, LLC | Current Name |
| ROCK FINANCIAL CORPORATION | Prior Name |

## Business Entity Details
## Officers

| Name | ROCKET MORTGAGE, LLC |
|------|----------------------|
| Entity Number | 2698396 |
| Entity Type | Limited Liability Company |
| Status | Active |
| Citizenship | Foreign |
| Entity Creation Date | 06/03/1996 |
| Effective Date | 06/03/1996 |
| State Of Inc | MI |
| Address | %CT Corporation System Philadelphia |

## Filed Documents

The information presented below is for your reference. To place an order you will need to log in. If you do not have a PENN File account, you may register for an account by clicking here (/Account/Register_account).

Show 25 entries                                                    Filter Records

| Select | Date | Document | Pages | Plain Copy Quantity# | Price | Certified Copy Quantity# | Certified Copy Price | Microfilm # | Microfilm Start | Microfilm End | Line Total |
|--------|------|----------|-------|----------------------|-------|--------------------------|----------------------|-------------|-----------------|---------------|------------|
|  |  | Search Request |  |  | $15.00 |  |  |  |  |  |  |

"A"

| Select | Date | Document | Pages | Plain Copy Quantity# | Price | Certified Copy Quantity# | Certified Copy Price | Microfilm # | Microfilm Start | Microfilm End | Line Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 06/03/1996 | CERTIFICATE OF AUTHORITY 1 | | 1 | $0.00 | 0 | $40.00 | 9638 | 1694 | 1695 | |
| | 01/10/2000 | AMENDED CERT. OF AUTHORITY- -BUSINESS Foreign 2 | | 1 | $0.00 | 0 | $40.00 | 2000003 | 618 | 619 | |
| | 01/10/2000 | CHANGE OF REGISTERED OFFICE - Domestic 3 | | 1 | $0.00 | 0 | $40.00 | 200004 | 1644 | 1645 | |
| ☐ | 12/23/2005 | DOMESTIC - CHANGE OF REGISTERED OFFICE 4 | 2 | 1 | $3.00 | 0 | $40.00 | 38 | 1727 | 2 | |
| ☐ | 04/16/2020 | Transfer of Registration - Foreign 5 | 3 | 1 | $3.00 | 0 | $40.00 | | | | |
| ☐ | 08/03/2021 | Amendment - Foreign Registration Statement 6 | 2 | 1 | $3.00 | 0 | $40.00 | | | | |

Showing 1 to 7 of 7 entries

Previous | 1 | Next

| Select | Date | Document | | Quantity # | Price | Search Fee | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | All Dates | All Certified Copies | 7 | Quantity # 1 | $40.00 | Search Fee $15.00 | | | |
| ☐ | All Dates | All Plain Copies | 7 | Quantity # 1 | $0.00 | Search Fee $15.00 | | | |

Note: Some of the images are currently unavailable through the website. You may submit an order for copies by selecting a document and then clicking on the 'Proceed to Cart' button. An initial $15 search fee is due and payable at the time of the order. Additional fees of $3.00 per page will be invoiced through the email identified with the user login. When all fees due have been paid, you will receive an email indicating the order is available on the users Home page under the Downloads section.

By selecting 'Proceed to Cart' you are agreeing to pay all fees for this order.

## Certified Documents

| Select | Date | Document | Pages | Quantity# | Price | | Line Total |
|---|---|---|---|---|---|---|---|
| ☐ | 04/06/2022 | Certificate of Registration | 1 | 1 | $40.00 | | |
| ☐ | 04/06/2022 | Index and Docket Report | 1 | 1 | $15.00 | | |
| ☐ | 04/06/2022 | Index and Docket Certified Report | 1 | 1 | $55.00 | | |

Corporations ▾     Search Business Entities (corpsearch.aspx)     Search UCC Transactions (uccsearch.aspx)     Forms ▾

Contact Corporations (http://www.dos.pa.gov/BusinessCharities/Pages/default.aspx)     Login (https://hub.business.pa.gov/login)

Search entity / Select entity / Order documents

# Order Business Documents

Date: 04/06/2022

## Business Name History

| Name | Name Type |
| --- | --- |
| Amrock Inc. | Prior Name |
| Amrock, LLC | Current Name |
| TITLE SOURCE, INC. | Prior Name |

## Business Entity Details
### Officers

| Name | Amrock, LLC |
| --- | --- |
| Entity Number | 2940044 |
| Entity Type | Limited Liability Company |
| Status | Active |
| Citizenship | Foreign |
| Entity Creation Date | 03/15/2000 |
| Effective Date | 03/15/2000 |
| State Of Inc | MI |
| Address | %CT Corporation System Philadelphia |

## Filed Documents

The information presented below is for your reference. To place an order you will need to log in. If you do not have a PENN File account, you may register for an account by clicking here (/Account/Register_account).

Show 25 entries                                    Filter Records

| Select | Date | Document | Pages | Plain Copy Quantity# | Price | Certified Copy Quantity# | Certified Copy Price | Microfilm # | Microfilm Start | Microfilm End | Line Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Search Request | | | $15.00 | | | | | | |
| | 03/15/2000 | CERTIFICATE OF AUTHORITY 1 | | 1 | $0.00 | 0 | $40.00 | 2000036 | 1056 | 1057 | |

" B "

| Select | Date | Document | Pages | Plain Copy Quantity# | Price | Certified Copy Quantity# | Certified Copy Price | Microfilm # | Microfilm Start | Microfilm End | Line Total |
|--------|------|----------|-------|----------------------|-------|--------------------------|----------------------|-------------|-----------------|--------------|------------|
| ☐ | 01/04/2006 | FOREIGN BUSINESS CHANGE OF REGISTERED OFFICE 2 | 2 | 1 | $3.00 | 0 | $40.00 | 40 | 386 | | 2 |
| ☐ | 01/30/2018 | Amendment - Foreign Registration Statement 3 | 3 | 1 | $3.00 | 0 | $40.00 | | | | |
| ☐ | 07/23/2020 | Transfer of Registration - Foreign 4 | 2 | 1 | $3.00 | 0 | $40.00 | | | | |

Showing 1 to 5 of 5 entries

Previous | 1 | Next

| Select | Date | Document | Pages | Quantity# | Price | Search Fee |
|--------|------|----------|-------|-----------|-------|------------|
| ☐ | All Dates | All Certified Copies | 7 | Quantity # 1 | $40.00 | Search Fee $15.00 |
| ☐ | All Dates | All Plain Copies | 7 | Quantity # 1 | $0.00 | Search Fee $15.00 |

Note: Some of the images are currently unavailable through the website. You may submit an order for copies by selecting a document and then clicking on the 'Proceed to Cart' button. An initial $15 search fee is due and payable at the time of the order. Additional fees of $3.00 per page will be invoiced through the email identified with the user login. When all fees due have been paid, you will receive an email indicating the order is available on the users Home page under the Downloads section.

By selecting 'Proceed to Cart' you are agreeing to pay all fees for this order.

## Certified Documents

| Select | Date | Document | Pages | Quantity# | Price | Line Total |
|--------|------|----------|-------|-----------|-------|------------|
| ☐ | 04/06/2022 | Certificate of Registration | 1 | 1 | $40.00 | |
| ☐ | 04/06/2022 | Index and Docket Report | 1 | 1 | $15.00 | |
| ☐ | 04/06/2022 | Index and Docket Certified Report | 1 | 1 | $55.00 | |

## Order Total :

<< Back to Search Results

Login

OR VOLUME   PAGE
202000007826 OR   5752   120

OR Volume  5752 Page  120 - 145
Filed in WAYNE COUNTY, PA
DEBORAH L BATES, RECORDER OF DEEDS
11-02-2020 At 03:08 pm.   Fee:   115.75
202000007826 MORTGAGE



**Parcel Number:**
11-0-0018-0008

**Prepared By:**

Quicken Loans. LLC
Sherry Scott
1050 Woodward Ave
Detroit, MI 48226-1906
(313)373-0000

**Return To:**
Document Management
Quicken Loans. LLC
1050 Woodward Ave
Detroit, MI  48226-1906
(313)373-0000



I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Wayne County, Pennsylvania

Deborah L. Bates
Recorder of Deeds

**Premises:**
204 Terrace Hts
Honesdale, PA 18431-1214

When Recorded Return To:
Indecomm Global Services
1427 Energy Park Drive
St. Paul, MN  55108

---

*81702060*

## Mortgage

68170763  *605 Z876*                                          3457538747

VA Case Number: 10-1060773517   **MIN:** 100039034575387479

### Definitions

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20, 21 and 27. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

**(A)   "Security Instrument"** means this document, which is dated   August 20, 2020  , together
with all Riders to this document.

---

5481878415
PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
- Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 1 of 21

q03457538747 0233 231 0121

*''C''*

**(B)   "Borrower"** is John J. Batcher, an unmarried man

Borrower is the mortgagor under this Security Instrument.

**(C)   "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D)   "Lender"** is Quicken Loans, LLC

Lender is a Limited Liability Company
organized and existing under the laws of          the State of Michigan
Lender's address is 1050 Woodward Ave, Detroit, MI  48226-1906

**(E)   "Note"** means the promissory note signed by Borrower and dated    August 20, 2020 .
The Note states that Borrower owes Lender One Hundred Ninety Two Thousand One Hundred and 00/100
            Dollars (U.S. $ 192,100.00            ) plus interest. Borrower has promised
to pay this debt in regular Periodic Payments and to pay the debt in full not later than
September 1, 2045.

**(F)   "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)   "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 2 of 21

q03457538747 0233 231 0221

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☒ VA Rider  ☐ Biweekly Payment Rider  ☒ Other(s) [specify]
Legal Attached

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

---

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 3 of 21



q03457538747 0233 231 0321

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                    of                  Wayne                        :
*(Type of Recording Jurisdiction)*              *(Name of Recording Jurisdiction)*:


SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.


which currently has the address of 204 Terrace Hts
                                                          *(Street)*
            Honesdale            *(City)*, Pennsylvania 18431-1214 *(Zip Code)*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 4 of 21

q03457538747 0233 231 0421

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 5 of 21



q03457538747 0233 231 0521

and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 6 of 21

q03457538747 0233 231 0621

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 7 of 21

q03457538747 0233 231 0721

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 8 of 21



q03457538747 0233 231 0821

economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 9 of 21



q03457538747 0233 231 0921

payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 10 of 21



q03457538747 0233 231 1021

INSTRUMENT VOLUME   PAGE
202000007826  OR     5752   130

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 11 of 21

q03457538747  0233  231  1121

Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 12 of 21



q03457538747 0233 231 1221

Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 13 of 21

q03457538747 0233 231 1321

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 14 of 21



q03457538747 0233 231 1421

Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 15 of 21



q03457538747 0233 231 1521

pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 16 of 21


q03457538747 0233 231 1621

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary,

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 17 of 21



q03457538747 0233 231 1721

Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 18 of 21

q03457538747 0233 231 1821

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services
Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 19 of 21

q03457538747 0233 231 1921

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____  08/20/2020_____  *(Seal)*
John J. Batcher                                    -Borrower

_____  _____  *(Seal)*
                                                  -Borrower

_____  _____  *(Seal)*
                                                  -Borrower

_____  _____  *(Seal)*
                                                  -Borrower

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 20 of 21

q03457538747 0233 231 2021

**Acknowledgment**
**State of** Pennsylvania
**County of** Wayne
This record was acknowledged before me on  August 20, 2020  by
John J. Batcher

```
Commonwealth of Pennsylvania
NOTARIAL SEAL
ROBERT L HYNOSKI, NOTARY PUBLIC
City of Nanticoke, Luzerne County
My Commission Expires April 23, 2021
```

Notary Public ROBERT L. HYNOSKI
My commission expires:  APRIL 23, 2021

**Certificate of Residence**
I,  Marc Burgos                                    , do hereby certify that the
correct address of the within-named Mortgagee is 1901 E Voorhees Street, Suite C, Danville, IL 61834.
Witness my hand this 25ᵗʰ day of  August 2020.

Marc Burgos                        Agent of Mortgagee

**Loan Origination Organization:** Quicken Loans, LLC
**NMLS ID:** 3030
**Loan Originator:** Gerald T Pierce
**NMLS ID:** 1149713

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 21 of 21

q03457538747 0233 231 2121

MERS MIN: 100039034575387479                           3457538747

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
VA Case Number: 10-1060773517

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this    20th day of August, 2020        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to   Quicken Loans, LLC

(herein "Lender") and covering the Property described in the Security Instrument and located at
204 Terrace Hts
Honesdale, PA 18431-1214
[Property Address]

**VA GUARANTEED LOAN COVENANT:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

Multistate VA Guaranteed Loan And Assumption Policy Rider
Wolters Kluwer Financial Services, Inc.
5481878444

VMP538R (1909).00
Page 1 of 3

q03457538747 0125 232 0103

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFEROF THE PROPERTY:This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to 38 U.S.C. 3714.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to
(        0.50   %) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the VA. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by VA for a loan to which 38 U.S.C. 3714 applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the Veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify VA to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

Multistate VA Guaranteed Loan And Assumption Policy Rider
Wolters Kluwer Financial Services, Inc.

q03457538747 0125 232 0203

VMP538R (1909).00
Page 2 of 3

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____   08/20/2020   _____
John J. Batcher                                 -Borrower

_____   _____
                                                -Borrower

_____   _____
                                                -Borrower

_____   _____
                                                -Borrower

*[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Multistate VA Guaranteed Loan And Assumption Policy Rider
Wolters Kluwer Financial Services, Inc.

q03457538747 0125 232 0303

VMP538R (1909).00
Page 3 of 3

202000007826 OR   VOLUME   PAGE
5752   144

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 11-0-0018-0008

Land situated in the Borough of Honesdale in the County of Wayne in the State of PA

BEGINNING AT THE NORTHEAST CORNER OF THE PROPERTY NOW OR FORMERLY OF JOSEPH A. DICKHUT, BEING LOT NO. 16 IN SECTION II, OF THE DEVELOPMENT OF JOHN C. WEIDNER, THENCE ALONG THE SOUTHERLY LINE OF THE HONESDALE JUNIOR-SENIOR HIGH SCHOOL NORTH 87 DEGREES 59 MINUTES 10 SECONDS EAST 240 FEET TO A CORNER; THENCE SOUTH 2 DEGREES 7 MINUTES 5 SECONDS EAST 200.65 FEET TO THE CENTER OF A PROPOSED RIGHT-OF-WAY LEADING FROM TERRACE STREET TO GROVE STREET; THENCE ALONG THE CENTER OF THE PROPOSED RIGHT-OF-WAY SOUTH 87 DEGREES 52 MINUTES 55 SECONDS WEST 240 FEET TO A CORNER IN THE CENTER OF THE PROPOSED RIGHT-OF-WAY, BEING ALSO THE SOUTHEAST CORNER OF THE AFORESAID LOT NO. 16 IN SECTION II (DICKHUT); THENCE NORTH 2 DEGREES 7 MINUTES 5 SECONDS WEST 201.09 FEET TO THE PROPERTY OF THE HONESDALE JUNIOR-SENIOR HIGH SCHOOL, THE POINT OR PLACE OF BEGINNING. CONTAINING 1.1 ACRES, BEING LOT NO. 1, IN SECTION III, OF A PLAN OF LOTS DATED OCTOBER, 1971, ENTITLED "MAP SHOWING THE SUBDIVISION OF A PORTION OF LAND OF JOHN WEIDNER," WHICH MAP IS RECORDED IN MAP BOOK 18, AT PAGE 29. SUBJECT TO BOROUGH SET- BACK LINE AS SET FORTH ON MAP OF SAME.

NOTE: The Company is prohibited from insuring the area or quantity of the land. The Company does not represent that any acreage or footage calculations are correct. References to quantity are for identification purposes only.

Land situated in the Borough of Honesdale in the County of Wayne in the State of PA

ALL that certain piece or parcel of land lying, situate and being in the Borough of Honesdale, County of Wayne and State of Pennsylvania, bounded and described as follows:

BEGINNING at the Northeast corner of the property now or formerly of Joseph A. Dickhut, being Lot No. 16 in Section II, of the Development of John C. Weidner, thence along the Southerly line of the Honesdale Junior-Senior High School North 87 degrees 59 minutes 10 seconds East 240 feet to a corner; thence South 2 degrees 7 minutes 5 seconds East 200.65 feet to the center of a proposed right-of-way leading from Terrace Street to Grove Street; thence along the center of the proposed right-of-way South 87 degrees 52 minutes 55 seconds West 240 feet to a corner in the center of the proposed right-of-way, being also the Southeast corner of the aforesaid Lot No. 16 in Section II (Dickhut); thence North 2 degrees 7 minutes 5 seconds West 201.09 feet to the property of the Honesdale Junior-Senior High School, the point or place of BEGINNING. CONTAINING 1.1 acres, being Lot No. 1, in Section III, of a

plan of lots dated October, 1971, entitled "Map showing the subdivision of a portion of land of John Weidner," which map is recorded in Map Book 18, at page 29.

Commonly known as:   204 Terrace Hts, Honesdale, PA 18431-1214

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES.

*U07458504*

1632   9/24/2020   81702060/1

3457538747

| File No.: | 68170763 | Amrock Inc. |
| Print Date: | 08/18/20 | 662 Woodward Ave. |
| Settlement Location: | 204 Terrace Hts | Detroit, MI 48226 |
| | Honesdale, PA 18431-1214 | |

**Property Address:** 204 Terrace Hts
Honesdale, PA 18431-1214
**Lender:** Quicken Loans, LLC
**Borrower:** John J. Batcher
**Settlement Date:** 08/20/20
**Disbursement Date:** 08/25/20

| | Borrower Debit | Credit |
|---|---|---|
| **Financial** | | |
| Loan Amount | | $192,100.00 |
| | | |
| **Prorations/Adjustments** | | |
| Homeowner's Insurance Premium ($871.57) | $871.57 | |
| | | |
| **Loan Charges to Quicken Loans, LLC** | | |
| Loan Discount Fee | $1,440.75 | |
| Origination Fee | $1,857.90 | |
| Prepaid Interest  $11.84 per day from 08/25/20 to 09/01/20 | $82.88 | |
| | | |
| **Other Loan Charges** | | |
| Credit Report to FactualData-SB | $2.74 | |
| Flood Life of Loan Coverage to CoreLogic Flood Services | $6.00 | |
| Flood Determination Fee to CoreLogic Flood Services | $10.50 | |
| Tax Certification Fee to Amrock Inc. ($35.00) | | |
| | | |
| **Impounds** | | |
| Homeowner's Insurance 2 mo  @    $72.63/mo | $145.26 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Notary's Fees to Amrock Inc. ($125.00) | | |
| Loan Policy of Title Insurance ($192,100.00) to Amrock Inc. | $1,350.00 | |
| Endorsement-ALTA 8.1 to Amrock Inc. | $100.00 | |
| Endorsement-ALTA 9 to Amrock Inc. | $150.00 | |
| Express Mail/Courier Fee to Amrock Inc. ($45.00) | | |
| Final Policy Short Form to Amrock Inc. | $200.00 | |

5481878470

q03457538747 2277 235 0102

| File No.: | 68170763 |
| Print Date: | 08/18/20 |



" D "

3457538747

**Government Recording and Transfer Charges**
Recording Fee-Mortgage to Wayne County Recorder of Deeds $102.75

**Payoff(s)**
QUICKEN LOANS $185,789.63
Good Faith Deposit
Renovation Escrow Amount

|  | Debit | Credit |
|---|---|---|
| **SubTotals** | $192,109.98 | $192,100.00 |
| Due From Borrower |  | $9.98 |
| **Totals** | $192,109.98 | $192,109.98 |

## Acknowledgement

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement. We/I authorize Amrock Inc. to cause the funds to be disbursed in accordance with this statement.

**BORROWER(S):**

John J. Batcher

File No.: 68170763
Print Date: 08/18/20

```
09071704062022                Wayne County Prothonotary
  PYSPRT                        Civil Case Detail Report
```

Case No.......... 2020-00287  THE DIME BANK (vs) UMPY'S TOO, INC. (BATCHER)

```
Reference No......                                 Filed..........  8/28/2020
Case Type......... COMPLAINT - CONFESSION           Time...........      3:37
Judgment..........           $.00                   Execution Date.  3/10/2022
Judge Assigned....                                  Jury Trial.....
Disposed Desc.....                                  Disposed Date..  0/00/0000
----------- Case Comments -----------              Higher Crt 1...
                                                   Higher Crt 2...
```

************************************************************************
++ GENERAL INDEX ++

| Indexed Party | | Attorney Info |
|---|---|---|
| THE DIME BANK<br>  HONESDALE, PA 18431 | PLAINTIFF | GREGORY NICHOLAS D<br>  GREGORY & ASSOCIATES, PC<br>  207 ERIE STREET<br>  HONESALE, PA  18431 |
| UMPYS TOO INC<br>  WHITE MILLS, PA 18473 | DEFENDANT | |
| BATCHER JOHN<br>  HONESDALE, PA 18431 | DEFENDANT | |
| BATCHER CHERYL<br>  HONESDALE, PA 18431 | DEFENDANT | |

************************************************************************
++ JUDGEMENT INDEX ++

| Indexed Party | Amount | Date | Description |
|---|---|---|---|
| UMPYS TOO INC | $49,047.41 | 8/28/2020 | CONFESSION OF JDGMT |
| BATCHER JOHN | $49,047.41 | 8/28/2020 | CONFESSION OF JDGMT |
| BATCHER CHERYL | $49,047.41 | 8/28/2020 | CONFESSION OF JDGMT |
| BATCHER JOHN | $54,212.62 | 1/03/2022 | REASSESS DAMAGES |
| BATCHER CHERYL | $54,212.62 | 1/03/2022 | REASSESS DAMAGES |
| UMPYS TOO INC | $54,194.62 | 3/10/2022 | WRIT OF EXECUTION |
| BATCHER JOHN | $54,194.62 | 3/10/2022 | WRIT OF EXECUTION |
| BATCHER CHERYL | $54,194.62 | 3/10/2022 | WRIT OF EXECUTION |

************************************************************************
++ DOCKET ENTRIES ++

| Date | Entry Text |
|---|---|
| | - - - - - - - FIRST ENTRY - - - - - - - - |
| 8/28/2020 | CAPTION: THE DIME BANK VS. UMPY'S TOO, INC., JOHN BATCHER AND CHERYL L. BATCHER |
| 8/28/2020 | CIVIL COVER SHEET  -  SUPREME COURT OF PENNSYLVANIA |
| 8/28/2020 | NOTICE UNDER RULE 2958.1 OF JUDGMENT AND EXECUTION THEREON |
| 8/28/2020 | ENTRY OF JUDGMENT - THIS 28TH DAY OF AUGUST 2020, JUDGMENT IS HEREBY ENTERED IN FAVOR OF THE DIME BANK AND AGAINST UMPY'S TOO, INC., JOHN BATCHER AND CHERYL L. BATCHER, IN THE AMOUNT OF FORTY-NINE THOUSAND FORTY-SEVEN AND 41/100 DOLLARS ($49,047.41) TOGETHER WITH INTEREST FROM AUGUST 28, 2020, CALCULATED AT THE RATE OF EIGHT AND 22/100 DOLLARS ($8.22) PER DAY, AND ALL COSTS OF SUIT.  EDWARD G. SANDERCOCK, PROTH. |
| 8/28/2020 | CONFESSION OF JUDGMENT - ENTER JUDGMENT IN FAVOR OF THE DIME BANK AGAINST THE DEFENDANTS IN THE AMOUNT OF FORTY-NINE THOUSAND FORTY-SEVEN AND 41/100 DOLLARS ($49,047.41) TOGETHER WITH INTEREST. NICHOLAS D. GREGORY, ESQ.<br>*SCANNED* |
| 8/28/2020 | COMPLAINT IN CONFESSION OF JUDGMENT / VERIFICATION<br>*SCANNED* |

"E"

PYSPRT
0901710406202
Wayne County Prothonotary
Civil Case Detail Report

Page 2
4/06/2022

Case No. ............ 2020-00287   THE DIME BANK (vs) UMPY'S TOO, INC. (BATCHER)
Reference No. ..........
Case Type ......... COMPLAINT - CONFESSION
Judgment .......... $     .00
Judge Assigned ...
Disposed Desc. .....
Case Comments -------------

Filed............ 8/28/2020
Time............ 3:37
Execution Date.. 3/10/2022
Jury Trial.......
Disposed Date....
Higher Crt 1... Higher Crt 1...
Higher Crt 2... Higher Crt 2... 0/00/0000

| Date | Description |
|---|---|
| 8/28/2020 | CERTIFICATION OF LAST KNOWN ADDRESS OF PLAINTIFF AND DEFENDANT / CERTIFICATION OF COMPLIANCE *SCANNED* |
| 11/23/2020 | CERTIFICATION OF SERVICE (NOTICE UNDER RULE 2958.1 OF JGMT & EX; NOTICE OF DEF RIGHTS; ENTRY OF JGMT & ALL DOCUMENTS CONTAINED IN CONF OF JDMT) / CERTIFICATION OF COMPLIANCE WITH PUBLIC ACCESS POLICY *SCANNED* |
| 11/08/2021 | PETITION TO REASSESS DAMAGES - NICHOLAS D. GREGORY, ESQ. / VERIFICATION / CERTIFICATE OF SERVICE / CERTIFICATION OF COMPLIANCE WITH PUBIC ACCESS POLICY *SCANNED* |
| 11/22/2021 | RULE RETURNABLE - THIS 19 DAY OF NOVEMBER 2021, UPON CONSIDERATION OF PLAINTIFF'S, THE DIME BANK, MOTION TO REASSESS DAMAGES, IT IS HEREBY ORDERED THAT: 1. A RULE IS HEREBY ISSUED UPON RESPONDENTS, UMPY'S TOO, INC., JOHN BATCHER AND CHERYL L. BATCHER, TO SHOW CAUSE WHY THE RELIEF REQUESTED SHOULD NOT BE GRANTED. 2. RULE RETURNABLE FOR ANSWER ONLY IN TWENTY (20) DAYS FROM THE DATE THIS RULE IS SERVED UPON THE RESPONDENTS. 3. IF NO ANSWER IS FILED BY THE SPECIFIED DATE, THIS RULE MAY BE MADE ABSOLUTE UPON MOTION. 4. IF NO ANSWER IS FILED, EITHER PARTY MAY PETITION FOR HEARING OR ARGUMENT, AS APPROPRIATE, TO BE HELD AT THE WAYNE -CONTINUED- |
| 11/22/2021 | RULE RETURNABLE - CONTINUED - COUNTY COURTHOUSE, HONESDALE, PA. 5. PLAINTIFF THE DIME BANK IS HEREBY ORDERED TO SERVE A COPY OF THIS RULE AND MOTION UPON THE RESPONDENTS AND FILE A PROOF OF SERVICE THEREAFTER. BY THE COURT; JANINE EDWARDS, P.J. SERVED: 11/23/21 EGS. *SCANNED* |
| 12/14/2021 | CERTIFICATE OF SERVICE (RULE RETURNABLE) / CERTIFICATION OF COMPLIANCE WITH PUBLIC ACCESS POLICY ' *SCANNED* |
| 12/27/2021 | PLAINTIFF'S MOTION TO MAKE RULE RETURNABLE ABSOLUTE / VERIFICATION / CERTIFICATE OF SERVICE / CERTIFICATION OF COMPLIANCE WITH PUBLIC ACCESS POLICY *SCANNED* |
| 1/03/2022 | ORDER - THIS 3 DAY OF JANUARY 2022 UPON CONSIDERATION OF PLAINTIFFS MOTION TO MAKE RULE RETURNABLE ABSOLUTE, IT IS HEREBY ORDERED AND DECREED THAT THE PLAINTIFF'S PETITION TO REASSESS DAMAGES IS GRANTED. AND THE DAMAGES AWARDED IN FAVOR THE PLAINTIFF AND AGAINST THE DEFENDANT ARE HEREBY AMENDED FROM FORTY-NINE THOUSAND FORTY-SEVEN AND 41/100 DOLLARS ($49,047.41) TO FIFTY-FOUR THOUSAND TWO HUNDRED TWELVE AND 62/100 DOLLARS ($54,212.62). BY THE COURT: JANINE EDWARDS, P.J. SERVED: 1-3-22 EGS. *SCANNED* |
| 3/10/2022 | PRAECIPE FOR ISSUANCE OF WRIT OF EXECUTION UPON A CONFESSED JUDGMENT - ISSUE A WRIT OF EXECUTION UPON A JUDGMENT ENTERED BY CONFESSION IN THE WARRANT AGAINST ABOVE-NAMED DEFENDANTS, UMPY'S TOO, INC., JOHN BATCHER, JOHN J. BATCHER AND CHERYL L. BATCHER, IN THE AMOUNT SET FORTH BELOW: A. PRINCIPAL BALANCE $39,946.48(1); B. UNPAID INTEREST $4,000.78; C. ATTORNEY'S COMMISSION PURSUANT TO WARRANT OF ATTORNEY $4,458.86; D. COSTS OF COLLECTION, INCLUDING FEES FROM BANKRUPTCY PROCEEDING $5,788.50; TOTAL $54,194.62* (1)PRINCIPAL BALANCE REFLECTS PRINCIPAL BALANCE AMOUNT -CONTINUED- |
| 3/10/2022 | PRAECIPE FOR ISSUANCE OF WRIT OF EXECUTION UPON A CONFESSED JUDGMENT - CONTINUED - AT TIME OF ENTRY OF JUDGMENT, WHICH WAS |

```
09071704062022                    Wayne County Prothonotary                  Page      3
   PYSPRT                          Civil Case Detail Report                   4/06/2022
```

Case No.......... 2020-00287   THE DIME BANK (vs) UMPY'S TOO, INC. (BATCHER)

| | | | |
|---|---|---|---|
| Reference No...... | | Filed.......... | 8/28/2020 |
| Case Type......... | COMPLAINT - CONFESSION | Time........... | 3:37 |
| Judgment.......... | $.00 | Execution Date. | 3/10/2022 |
| Judge Assigned.... | | Jury Trial..... | |
| Disposed Desc..... | | Disposed Date.. | 0/00/0000 |
| ----------- Case Comments ----------- | | Higher Crt 1... | |
| | | Higher Crt 2... | |

```
            $43,830.52, LESS A CREDIT GIVEN TO DEFENDANTS IN THE AMOUNT OF
            $3,884.04, WHICH REPRESENTS FUNDS PAID ON THE ACCOUNT BY VIRTUE
            OF A RIGHT OF SET-OFF FROM AN EXISTING DEPOSIT ACCOUNT OF DEFENDANT
            *TOGETHER WITH COSTS, ATTORNEY'S FEES AND INTEREST FROM OCTOBER 19,
            2021, ACCRUING AT THE RATE OF SEVEN AND 49/100 DOLLARS ($7.49)
            PER DAY.  NICHOLAS D. GREGORY, ESQ. / CERTIFICATION / CERTIFICATION
            OF COMPLIANCE WITH THE PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL
            SYSTEM OF PENNSYLVANIA                        -CONTINUED-
            --------------------------------------------------------------
 3/10/2022  PRAECIPE FOR ISSUANCE OF WRIT OF EXECUTION UPON A CONFESSED
            JUDGMENT - CONTINUED -
            WRIT TO SHERIFF OF WAYNE COUNTY / CERTIFICATION OF COMPLIANCE WITH
            THE PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF
            PENNSYLVANIA
            *SCANNED*
            --------------------------------------------------------------
 3/10/2022  AFFIDAVIT PURSUANT TO RULE 3129.1 / CERTIFICATION OF COMPLIANCE
            WITH THE PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF
            PENNSYLVANIA
            *SCANNED*
            - - - - - - - - - - - LAST ENTRY - - - - - - - - - - - - - -
```

```
***************************************************************************
                      ++ Escrow Information ++
                      Beg. Balance      Pymts/Adjmts      End. Balance
Cost / Fee            ------------      ------------      ------------
COMPL CIVIL              $74.50            $74.50            $.00
TAX ON CMPLT              $.50              $.50             $.00
JCS/ATJ FEE             $40.25            $40.25            $.00
AUTOMATION FEE           $5.00             $5.00            $.00
JUDGMENT NO TAX         $14.00            $14.00            $.00
WRIT OF EXEC            $22.00            $22.00            $.00
                     ------------      ------------      ------------
                       $156.25           $156.25            $.00

***************************************************************************
                        End of Case Information
```

CLOSED, CREDS, MEANSNO, 2002

# U.S. Bankruptcy Court
# Middle District of Pennsylvania (Wilkes-Barre)
# Bankruptcy Petition #: 5:21-bk-00889-HWV

|  |  |
|---|---|
| *Date filed:* | 04/21/2021 |
| *Date terminated:* | 08/24/2021 |
| *Debtor discharged:* | 08/09/2021 |
| *341 meeting:* | 06/04/2021 |
| *Deadline for objecting to discharge:* | 08/03/2021 |
| *Deadline for financial mgmt. course:* | 08/03/2021 |

Case Administrators
*Assigned to:* Chief Judge Henry W. Van Eck
Chapter 7
Voluntary
No asset

*Debtor disposition:* Standard Discharge

**Debtor 1**
**John J. Batcher**
204 Terrace Heights
Honesdale, PA 18431
WAYNE-PA
SSN / ITIN: xxx-xx-7661

represented by **Mark J. Conway**
Law Offices of Mark J Conway PC
502 South Blakely Street
Dunmore, PA 18512
570 343-5350
Fax : 570 343-5377
Email: info@mjconwaylaw.com
*TERMINATED: 07/22/2021*

**Brian E Manning**
502 South Blakely Street
Suite B
Dunmore, PA 18512
570-558-1126
Fax : 866-559-9808
Email: BrianEManning@comcast.net

**Trustee**
**John J Martin (Trustee)**
Law Offices of John J Martin
1022 Court Street
Honesdale, PA 18431
570 253-6899

**Asst. U.S. Trustee**
**United States Trustee**
228 Walnut Street, Suite 1190
Harrisburg, PA 17101
717 221-4515

| Filing Date | # | Docket Text |
|---|---|---|
| 04/21/2021 | <u>1</u><br>(53 pgs) | Chapter 7 Voluntary Petition for an Individual . Filing fee due in the amount of $ 338.00 Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. (Conway, Mark) (Entered: 04/21/2021) |

"F"

| | | |
|---|---|---|
| 04/21/2021 | 2 | Statement About Your Social Security Numbers (Document is restricted.) Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher (RE: related document(s)1). (Conway, Mark) (Entered: 04/21/2021) |
| 04/21/2021 | 3 | Creditor List Uploaded. (There is no image or paper document associated with this entry.) Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher (RE: related document(s)1). (Conway, Mark) (Entered: 04/21/2021) |
| 04/21/2021 | 4 (1 pg) | Certificate of Credit Counseling for Debtor 1 Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher (RE: related document(s)1). (Conway, Mark) (Entered: 04/21/2021) |
| 04/21/2021 | | Receipt of Voluntary Petition (Chapter 7)( 5:21-bk-00889) [misc,volp7a] ( 338.00) filing fee. Receipt number A9988100, amount $ 338.00. (RE: related document(s)1). (U.S. Treasury) (Entered: 04/21/2021) |
| 04/21/2021 | 5 (1 pg) | Certification of No Payment Advices Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. (Conway, Mark) (Entered: 04/21/2021) |
| 04/22/2021 | 6 | Notice of Meeting of Creditors and Appointment of Trustee. Request submitted to BNC for mailing (RE: related document(s)1). 341(a) meeting to be held 06/04/2021 at 10:50 AM - (Scranton) The 341 meeting will be conducted by telephone. Refer to the call-in instructions.. Last day to oppose discharge or dischargeability is 8/3/2021. Financial Management Certification due by 8/3/2021. (Miscevich, Jennifer) (Entered: 04/22/2021) |
| 04/22/2021 | 7 (6 pgs; 4 docs) | Notice of Meeting of Creditors and Appointment of Trustee. Request submitted to BNC for mailing (RE: related document(s) 6 ). (Gambini, Christopher) (Entered: 04/22/2021) |
| 04/22/2021 | 8 (1 pg) | Request for Notice under 2002 Filed by PRA Receivables Management, LLC. (Smith, Valerie) (Entered: 04/22/2021) |
| 04/24/2021 | 9 (4 pgs) | BNC Certificate of Notice (341 Meeting Notice (Chapter 7)) (RE: related document(s)7). Notice Date 04/24/2021. (Admin.) (Entered: 04/25/2021) |
| 04/24/2021 | 10 (4 pgs) | BNC Certificate of Notice (Notice) (RE: related document(s)7). Notice Date 04/24/2021. (Admin.) (Entered: 04/25/2021) |
| 05/28/2021 | 11 (1 pg) | Certificate of Financial Management for Debtor 1 Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. (Conway, Mark) (Entered: 05/28/2021) |
| 05/28/2021 | 12 (2 pgs; 2 docs) | Notice to Filing Party (M. Conway): Discrepancy between CM/ECF entry and uploaded PDF. Certification is for a different Debtor. (RE: related document(s)11). (Gambini, Christopher) (Entered: 05/28/2021) |
| 06/02/2021 | 13 (1 pg) | Certificate of Financial Management for Debtor 1 Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. (Conway, Mark) (Entered: 06/02/2021) |
| 06/28/2021 | 14 | Chapter 7 Trustee's Report of No Distribution: having been appointed trustee of the estate of the above-named debtor(s), report that I have neither |

| | | |
|---|---|---|
| | | received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Meeting of Creditors Held. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 216403.00, Assets Exempt: Not Available, Claims Scheduled: $ 486215.40, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 486215.40. (Martin (Trustee), John) (Entered: 06/28/2021) |
| 07/15/2021 | 15 (6 pgs; 3 docs) | Motion to Avoid a Lien of The Dime Bank. Notice served on 7/15/2021. Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. Objections due by 08/5/2021. (Attachments: # 1 Notice # 2 Proposed Order) (Conway, Mark) (Entered: 07/15/2021) |
| 07/15/2021 | 16 (6 pgs; 3 docs) | Motion to Avoid a Lien of Eastern Funding, LLC. Notice served on 7/15/2021. Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. Objections due by 08/5/2021. (Attachments: # 1 Proposed Order # 2 Notice) (Conway, Mark) (Entered: 07/15/2021) |
| 07/21/2021 | 17 (2 pgs) | Entry of Appearance of Brian E. Manning and Withdrawal of Appearance of Mark J. Conway Filed by Mark J. Conway of Law Offices of Mark J Conway PC on behalf of John J. Batcher. (Conway, Mark) (Entered: 07/21/2021) |
| 07/30/2021 | 18 | Order Reassigning Case effective 7/30/2021 to Judge Henry W. Van Eck in the interests of judicial administration and economy /s/Henry W. Van Eck (There is no image or paper document associated with this entry.) . (Stefano, Carol) (Entered: 07/30/2021) |
| 08/05/2021 | 19 (2 pgs) | Request for Notice under 2002 *and Entry of Appearance* Filed by David M. Gregory of Gregory & Associates, PC on behalf of The Dime Bank. (Gregory, David) (Entered: 08/05/2021) |
| 08/05/2021 | 20 (4 pgs; 2 docs) | Objection to *Debtor's Motion to Avoid Lien* Filed by David M. Gregory of Gregory & Associates, PC on behalf of The Dime Bank (RE: related document(s)15). (Attachments: # 1 Exhibit A) (Gregory, David) (Entered: 08/05/2021) |
| 08/09/2021 | 21 (3 pgs; 2 docs) | Discharge of Debtor(s). Request submitted to BNC for mailing (Admin.) (Entered: 08/09/2021) |
| 08/10/2021 | 22 (2 pgs; 2 docs) | Notice setting hearing. Request submitted to BNC for mailing. (RE: related document(s)15, 20). Hearing scheduled for 8/24/2021 at 09:30 AM at US Courthouse/Ronald Reagan Federal Building, Bankruptcy Ctrm, 3rd floor, Harrisburg, PA 17101. (Gambini, Christopher) (Entered: 08/10/2021) |
| 08/11/2021 | 23 (4 pgs) | BNC Certificate of Notice (Discharge (Chapter 7)) (RE: related document(s)21). Notice Date 08/11/2021. (Admin.) (Entered: 08/12/2021) |
| 08/16/2021 | 24 | Order Granting Motion to Avoid Lien (RE: related document(s)16). |

| | (2 pgs; 2 docs) | (Gambini, Christopher) (Entered: 08/16/2021) |
|---|---|---|
| 08/18/2021 | 25<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)24). Notice Date 08/18/2021. (Admin.) (Entered: 08/19/2021) |
| 08/23/2021 | 26<br>(5 pgs; 2 docs) | Motion to Withdraw. *Motion to Avoid Lien Without Prejudice* Filed by Brian E Manning on behalf of John J. Batcher (RE: related document(s)15, 20, 22). (Attachments: # 1 Proposed Order) (Manning, Brian) (Entered: 08/23/2021) |
| 08/24/2021 | 27 | Proceeding Memo re: Hearing on Motion to Avoid a Lien of The Dime Bank; held. Record Made. *Court to sign order granting motion to withdrawal.* Appearances: Brian Manning and Nicholas Gregory. Non-Appearances: N/A. (There is no image or paper document associated with this entry.) (RE: related document(s)15). (Goodling, Joan) (Entered: 08/24/2021) |
| 08/24/2021 | 28<br>(2 pgs; 2 docs) | Order Granting Motion to Withdraw Motion to Avoid Lien (RE: related document(s)26). (Gambini, Christopher) (Entered: 08/24/2021) |
| 08/24/2021 | 29<br>(2 pgs; 2 docs) | Final Decree. Request submitted to BNC for mailing (Admin.) (Entered: 08/24/2021) |
| 08/27/2021 | 30<br>(2 pgs) | BNC Certificate of Notice (Final Decree) (RE: related document(s)29). Notice Date 08/27/2021. (Admin.) (Entered: 08/28/2021) |
| 12/24/2021 | 31 | Trustee Certification of Services Rendered Under 11 U.S.C. Section 330(e). I rendered the following service in the case and am eligible for payment under 11 U.S.C. Section 330(e): Filed a Report of No Distribution. I declare under penalty of perjury that the foregoing is true and correct. (Executed on 12/24/2021). Filed by John J Martin (Trustee) on behalf of John J Martin (Trustee) (RE: related document(s) 14 ). (Martin (Trustee), John) (Entered: 12/24/2021) |

**PACER Service Center**

**Transaction Receipt**

04/06/2022 11:27:26

| PACER Login: | JJM1022a | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 5:21-bk-00889-HWV Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 3 | Cost: | 0.30 |